**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| Charles Eddie Buckles, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IDScan.net, Inc.<br><br>Defendant. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Charles Eddie Buckles ("Plaintiff"), individually and on behalf of all others similarly situated, asserts the following against Defendant IDScan.net, Inc. based on personal knowledge, where applicable, information and belief, and the investigation of counsel.

## INTRODUCTION

1. This action arises out of the unauthorized disclosure and exposure of the confidential, personal information of Plaintiff and Class Members, including but not limited to names, driver's license numbers, government-issued identification numbers, and medical information, held by Defendant IDScan.net ("IDScan" or "Defendant"). The Data Breach was publicly reported on or about September 2, 2026, following the discovery that more than 153 million driver's license records were being sold on a dark web service.

2. Defendant, a Louisiana-based identity verification company that serves major Fortune 500 entities, failed to adequately safeguard the Private Information entrusted to it. As a result of Defendant's collective failures to implement reasonable security measures, the Private Information of Plaintiff and Class Members was compromised and is now in the hands of

criminals. The exposed data includes highly sensitive information such as driver's license numbers and medical information, which are being exploited to facilitate identity theft, financial fraud, and the creation of fake identities.

3. Plaintiff brings this action individually and on behalf of a Nationwide Class of similarly situated individuals against Defendant for negligence, negligence per se, unjust enrichment, and breach of implied contract. Plaintiff seeks actual and putative damages, attorneys' fees, costs, and expenses, as well as appropriate injunctive and declaratory relief.

4. Plaintiff and Class Members seek to remedy these harms and prevent any future data compromise on behalf of themselves and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices. Specifically, Plaintiff seeks (a) disclosure of the full nature of the Data Breach and types of Private Information exposed; (b) the implementation of data security practices to reasonably guard against future breaches; and (c) the provision, at Defendant's expense, of lifetime identity theft protection services to all Data Breach victims.

## PARTIES

5. Plaintiff, individually and on behalf of all others similarly situated, is a natural person domiciled in the State of Louisiana. Plaintiff is a customer of multiple businesses who use IDScan.net to check and verify identities, and he provided his personal information to Defendant for identity verification purposes.

6. Defendant IDScan is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 2045 Lakeshore Drive, Suite 526, New Orleans, LA 70122. Defendant is an identity verification company that processes personal information for numerous clients, including Fortune 500 companies.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

8. The amount in controversy exceeds $5,000,000, exclusive of interest and costs. The breach exposed more than 153 million driver's license records, and the potential damages for the Class Members, including costs for credit monitoring, identity theft mitigation, and statutory penalties, easily exceed the jurisdictional threshold.

9. Minimal diversity of citizenship exists under 28 U.S.C. § 1332(d)(2)(A). The Defendant, IDScan, is a citizen of Louisiana. The proposed Class includes members from various states other than Louisiana state of citizenship.

10. The Court has general personal jurisdiction over the Defendant because the Defendant operates, conducts, engages in, and/or carries on a business in this State. The Defendant is a Louisiana-based identity verification company. The Defendant committed tortious and otherwise wrongful acts in Louisiana by failing to safeguard the personal information of Louisiana residents and allowing the exposure of millions of driver's license records.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because the Defendant is based in this District, and the acts and omissions giving rise to the Plaintiff's and Class Members' claims occurred in and emanated from this District.

## FACTUAL BACKGROUND

12. Defendant IDScan, a Louisiana-based identity verification company, serves as a custodian of sensitive personal information for numerous major Fortune 500 companies and other clients.

13. On or about September 2, 2026, a data breach occurred involving Defendant's systems, resulting in the unauthorized access and exposure of more than 153 million driver's license records.

14. The breach was first reported by investigative reporter and cybersecurity expert Brian Krebs, who identified compromised driver's license records being offered for sale on a dark web service known as Nexus.

15. The records exposed in the Data Breach include, but are not limited to, driver's license numbers, government-issued identification numbers, and medical information.

16. The compromised data is now being sold on the dark web, a heavily encrypted portion of the Internet not accessible via traditional search engines, where cybercriminals can conceal their identities and online activity.

17. The exposure of this specific category of Private Information creates a substantial risk of identity theft, as such data is frequently used to commit financial crimes, create fake identification documents, and open fraudulent accounts.

18. Upon information and belief, the breach was the result of a vendor attack, wherein cybercriminals infiltrated Defendant's internal network and exfiltrated data stored on that network.

19. Defendant failed to adequately safeguard the Private Information of the Plaintiff and the proposed Class Members, despite knowing or should have known that such data would be a target of cyberattacks.

20. As a direct result of the Data Breach, Plaintiff and Class Members face an imminent and substantial risk of identity theft, including the potential for unauthorized use of their

driver's license numbers and medical information to obtain government benefits, file fraudulent tax returns, or secure employment.

21. Plaintiff and Class Members have been forced to incur, and will continue to incur, costs and time to monitor their financial and personal records, place fraud alerts or credit freezes, and take other mitigation steps to protect against the misuse of their compromised Private Information.

22. The Defendant's failure to provide timely and specific notice of the Data Breach has severely diminished the ability of Plaintiff and Class Members to mitigate the harms resulting from the incident.

23. The nature of the exposed data, specifically driver's licenses and medical information, renders the Plaintiff and Class Members particularly susceptible to long-term fraud and identity theft, the effects of which may continue for years.

**A. Criminal-Market Value of Compromised Data**

24. The Defendant's inadequate security practices resulted in a data breach exposing more than 153 million driver's license records, which are now being actively sold on the dark web.

25. Investigative reporting confirms that a dark web service claims to offer more than 153 million driver's license records and 20 million other records from the breach, indicating significant market demand for the compromised data.

26. The monetizable value of the exposed data is established by the sale of specific driver's license records, which contain government identifiers and personal information that are highly sought after for identity fraud.

**B. Continuing Exposure and Misuse Risks**

27. Plaintiff and Class Members face a substantial and imminent risk of identity theft, financial fraud, and the creation of counterfeit identification documents due to the continuing exposure of their sensitive data. The unauthorized access and subsequent sale of driver's license records on the dark web create a persistent threat that allows bad actors to assume the identities of affected individuals for illicit purposes.

28. This risk is compounded by the persistence and replication of the compromised data, which remains available for resale and redistribution indefinitely. The dark web service involved has confirmed the availability of over 153 million driver's license records and 20 million additional records, ensuring that the stolen information is widely disseminated and accessible to criminal networks for years to come.

29. The specific categories of private information exposed, including driver's license numbers, government-issued identification details, and medical information, are uniquely suited for high-value identity fraud. Unlike less sensitive data, these records provide the comprehensive verification credentials necessary to bypass security protocols, open new financial accounts, and obtain government benefits in the names of Plaintiff and Class Members.

30. Consequently, Plaintiff and Class Members have incurred and will continue to incur significant out-of-pocket costs and time burdens to monitor their financial accounts, place credit freezes, and dispute fraudulent activity. These mitigation efforts are necessary to detect and prevent the misuse of their exposed data, yet the ongoing availability of their information on the dark web means the risk of future fraud and the need for vigilance will persist for an indefinite period.

**C. Breach Notification, Timing, and Adequacy**

31. Plaintiff was not notified of the breach by Defendant until the incident was publicly reported by investigative reporter Brian Krebs on September 2, 2026. The public disclosure revealed that more than 153 million driver's license records, including government identification numbers and medical information, were exposed and subsequently listed for sale on the dark web service known as Nexus.

32. The first indication Plaintiff received regarding the exposure of their data came from third-party news reports and cybersecurity experts rather than from Defendant's own breach notification protocols.

33. The notice provided to the public, and subsequently to Plaintiff, disclosed that Defendant's systems were compromised, but the specific timing of when Defendant discovered the breach or when the unauthorized actors accessed the data remains unknown. Defendant's failure to promptly alert affected individuals deprived Plaintiff of the opportunity to take immediate protective measures, such as placing fraud alerts or credit freezes, during the critical early window of the breach.

34. So far, Defendant has offered no specific mitigation services, such as credit monitoring or identity theft protection, to the affected population in the initial public disclosure or in any subsequent communication. The absence of a direct notification letter detailing the scope of the breach, the specific data categories exposed, and the steps Plaintiff should take to mitigate harm constitutes a failure to fulfill the duty to inform affected consumers of the immediate risks they face.

**D. Data-Security Safeguards and Regulatory Expectations**

35. Defendant, a Louisiana-based identity verification company, undertook the legal duty to safeguard the sensitive personal information entrusted to it by Plaintiff and millions of others, including driver's license numbers, government identification details, and medical information. As a custodian of such highly sensitive data, Defendant was expected to implement reasonable security measures commensurate with the nature of the information and the foreseeable risks of cyberattacks.

36. These standards also emphasize the necessity of restricting data access privileges to only those resources needed for specific job functions and investigating the security practices of any contractors or vendors involved in data processing.

37. Defendant was aware of the significant risks associated with storing driver's license records and other government identifiers, which are prime targets for cybercriminals seeking to commit identity theft and financial fraud.

## CLASS ALLEGATIONS

38. Plaintiff brings this lawsuit under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), and/or (c)(4) as representatives of the following classes:

> Nationwide Class: All individuals whose personally identifiable information was compromised in or as a result of the data breach that occurred on or about September 2, 2026.
>
> Louisiana Subclass: All natural persons residing in Louisiana whose personally identifiable information was compromised in or as a result of the data breach that occurred on or about September 2, 2026.

39. ***Numerosity.*** The Class is so numerous that joinder of all members is impracticable. Based on the scale of the breach, which exposed more than 153 million driver's license records and 20 million other records, the Class consists of at least hundreds of thousands, and likely

millions, of individuals. The exact number of Class Members is unknown to Plaintiff at this time but is ascertainable through Defendant's records.

40. ***Commonality.*** There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions include, without limitation: whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach; whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations; whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards; whether Defendant owed a duty to Class Members to safeguard their Private Information; whether Defendant breached its duty to Class Members to safeguard their Private Information; whether computer hackers obtained Class Members' Private Information in the Data Breach; whether Defendant knew or should have known that its data security systems and monitoring processes were deficient; whether Defendant failed to provide notice of the Data Breach in a timely manner; and whether Class Members suffered legally cognizable damages as a result of Defendant's misconduct.

41. ***Typicality.*** Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiff, like all Class Members, was injured by Defendant's uniform misconduct in failing to secure sensitive driver's license and medical data. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all other Class Members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of other Class Members arise from the same operative facts and are based on the same legal theories.

42. ***Adequacy of Representation.*** Plaintiff will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. The damages and infringement of rights Plaintiff suffered are typical of other Class Members, and Plaintiff seeks no relief that is antagonistic or adverse to the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, including data breach litigation, and Plaintiff intends to prosecute this action vigorously.

43. ***Predominance.*** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual members of the Class. The Class was created by a single, uniform event: the unauthorized access and exfiltration of millions of records from Defendant's centralized systems. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

44. ***Superiority.*** A class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, conducting this action as a class action presents far fewer management

difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

**TOLLING OF THE STATUTES OF LIMITATIONS**

45. Any applicable statute of limitations has been tolled by the "delayed discovery" rule. Plaintiff did not know, and had no reasonable way of knowing, that their Private Information, including driver's license numbers, government identifiers, and medical information, was intercepted and unlawfully disclosed to third parties because Defendant kept this information secret.

46. Defendant maintained exclusive knowledge of the breach and the exposure of over 153 million records. Defendant failed to disclose that its systems were compromised or that the data was being sold on the dark web until the breach was publicly reported by investigative reporter Brian Krebs on September 2, 2026.

47. The technical nature of the vendor breach and the concealment of the data exfiltration prevented Plaintiff from discovering the full scope of Defendant's conduct through the exercise of reasonable diligence. No disclosures or visible indicators alerted a reasonable user that their driver's license records and sensitive personal information were being transmitted to unauthorized third parties.

48. Plaintiff and the Class Members first learned of Defendant's conduct and the exposure of their Private Information only after the breach became publicly known in early September 2026. Prior to that date, Plaintiff had no notice of the incident and could not have filed this action.

49. For these reasons, all applicable statutes of limitation have been tolled based on the delayed discovery rule, and Defendant is estopped from relying on any statutes of limitations in defense of this action.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Negligence**

50. Plaintiff alleges that Defendant owed Plaintiff a duty of care to implement and maintain reasonable security procedures and practices appropriate to the nature of the personal information it collected, maintained, and processed, including driver's license numbers, government identification numbers, and medical information.

51. Defendant breached this duty of care by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information of Plaintiff. Specifically, Defendant failed to implement adequate technical and organizational safeguards to protect the computerized data it maintained, resulting in the unauthorized acquisition and disclosure of more than 153 million driver's license records.

52. Defendant's negligence was the actual and proximate cause of the Data Breach, which exposed Plaintiff's sensitive personal information, including driver's license numbers, government IDs, and medical information, to unauthorized third parties. The compromised data has been confirmed to be available for sale on the dark web, creating an immediate and ongoing risk of identity theft and fraud.

53. As a direct and traceable result of Defendant's negligence, Plaintiff have suffered and will continue to suffer damages, including the increased risk of future identity theft, the cost

and time incurred to monitor their credit and mitigate the effects of the breach, and the loss of the benefit of their bargain regarding the security of their personal information.

54. Plaintiff seeks judgment against Defendant for all damages sustained as a result of Defendant's negligence, including compensatory damages for out-of-pocket losses, costs of credit monitoring, and any other relief deemed just and proper by the Court.

**SECOND CLAIM FOR RELIEF**
**Negligence Per Se**

55. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

56. This Count is brought for Negligence Per Se based on Defendant's violation of specific statutory duties governing the security of personal information and the notification of data breaches.

57. The governing statute is La. R.S. § 51:3071 et seq., which imposes a duty on persons conducting business in Louisiana to implement and maintain reasonable security procedures and practices to protect personal information from unauthorized access, destruction, use, modification, or disclosure.

58. Defendant, IDScan, is a person conducting business in the State of Louisiana and maintains computerized data containing personal information that it does not own, thereby triggering the statutory duties under the identified governing statute.

59. Defendant breached its statutory duty to implement and maintain reasonable security procedures and practices by failing to protect the personal information of Plaintiff and Class members, resulting in a data breach that exposed more than 153 million driver's license

records, including driver's license numbers, government IDs, and medical information, which were subsequently sold on the dark web.

60. Defendant breached its statutory duty to provide timely notice of the data breach to Plaintiff and Class members as required by the identified governing statute, as the breach was reported on September 2, 2026, and Plaintiff were not provided with reasonably timely notice of the unauthorized acquisition of their personal information.

61. La. R.S. § 51:3071 et seq. was enacted to prevent the specific type of harm suffered by Plaintiff, namely identity theft and financial fraud resulting from the unauthorized disclosure of sensitive personal information such as driver's license numbers and medical data.

62. Defendant's breach of the statutory duties delineated in the identified governing statute actually and proximately caused the Data Breach and the resulting injury to Plaintiff, including the theft of their personal information, the increased risk of future identity theft, and the necessity to incur costs to mitigate the effects of the breach.

63. As a direct and traceable result of Defendant's negligence per se, Plaintiff have suffered actual damages, including the loss of the benefit of their bargain, the loss of value of their personal information, and the time and money incurred to monitor and remediate the effects of the Data Breach, which damages are ongoing and imminent.

64. Defendant's violation of the identified governing statute constitutes negligence per se, entitling Plaintiff to recover actual damages, statutory damages where applicable, and equitable relief as provided by law.

**THIRD CLAIM FOR RELIEF**
**Breach of Implied Contract**

65. Plaintiff and Defendant entered into an implied-in-fact contract whereby Defendant agreed to provide identity verification services to Plaintiff and to maintain the confidentiality and security of the personal information provided by Plaintiff in connection with such services.

66. As part of this implied agreement, Defendant undertook a duty to exercise reasonable care to protect Plaintiff's personal information from unauthorized access, disclosure, or misuse, given the sensitive nature of the data involved, including driver's license numbers, government identification numbers, and medical information.

67. Defendant breached this implied contractual duty by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, resulting in the compromise of the security, confidentiality, and integrity of Plaintiff's personal information.

68. The breach of this implied contract occurred when Defendant's systems were compromised, leading to the unauthorized acquisition and disclosure of Plaintiff's personal information, which was subsequently made available for sale on the dark web.

69. Defendant's failure to safeguard Plaintiff's personal information was the actual and proximate cause of the harm suffered by Plaintiff, including the increased risk of identity theft, financial fraud, and the need to incur costs to monitor and mitigate the effects of the breach.

70. As a direct result of Defendant's breach of the implied contract, Plaintiff has suffered and continues to suffer damages, including the loss of the benefit of the bargain, the loss

of value of the personal information, and the time and money expended to remediate the breach, the full extent of which is currently unknown but will be proven at trial.

71. Plaintiff seeks judgment against Defendant for breach of implied contract, including compensatory damages, costs, and such other relief as the Court deems just and proper.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**

72. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

73. Defendant, IDScan, is a Louisiana-based identity verification company that conducts business in the State of Louisiana and maintains computerized data containing the personal information of Plaintiff and millions of others.

74. Defendant received and retained a substantial benefit from the unauthorized use of Plaintiff's personal information, specifically driver's license numbers, government identification numbers, and medical information, which were exposed in the data breach and subsequently sold on the dark web.

75. Defendant's retention of the value derived from the compromised data constitutes unjust enrichment because Defendant has no legal basis to retain the benefits of Plaintiff's personal information, which was acquired and maintained through Defendant's failure to implement reasonable security procedures and practices.

76. It would be inequitable for Defendant to retain the value of the exposed data without compensating Plaintiff, as Defendant's gross negligence and failure to secure the data directly resulted in the unauthorized acquisition and commercial exploitation of Plaintiff's sensitive information.

77. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff are entitled to restitution of the value of the data misappropriated, including the costs incurred to mitigate the harm, the value of the lost benefit of their bargain, and any other damages traceable to Defendant's retention of the unauthorized benefits.

78. The specific amount of Defendant's unjust enrichment is currently unknown to Plaintiff and will be determined through discovery, but it is estimated to be substantial given the exposure of over 153 million records and the high value of driver's license and medical data on the dark web.

79. Plaintiff demand judgment against Defendant for the return of all unjustly enriched benefits, including the value of the compromised data, reasonable interest thereon, and any other equitable relief the Court deems just and proper.

## FIFTH CLAIM FOR RELIEF
### Violation of the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721, et seq.

80. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

81. Pursuant to 18 U.S.C. § 2722(a), "[i]t shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title."

82. Pursuant to 18 U.S.C. § 2721(a)(1), "[a] [s]tate department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available to any person or entity: personal information, as defined in 18 U.S.C. § 2725(3), about any individual obtained by the department in connection with a motor vehicle record, except as provided in subsection (b) of this section."

83. The DPPA provides a civil cause of action against "a person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted" under the statute. 18 U.S.C. § 2724(a).

84. "Person" is defined as "an individual, organization or entity." 18 U.S.C. § 2725(2). Defendant is a "person" under the DPPA.

85. "Personal information" is defined as "information that identifies an individual, including an individual's . . . driver identification number. . ." 18 U.S.C. § 2725(3). Plaintiff's and Class Members' Private Information, which includes driver's license numbers, is "personal information" under the DPPA.

86. "Motor vehicle record" is defined as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1). Defendant obtains motor vehicle records containing Plaintiff's and Class Members' Private Information, including their driver's license numbers.

87. Defendant obtains and processes motor vehicle records, including driver's license numbers, as part of its business operations providing identity verification services to its clients for profit.

88. Defendant's disclosure of Plaintiff's and Class Members' personal information to unauthorized individuals in the Data Breach violated 18 U.S.C. §§ 2722(a) and/or 2721(a)(1).

89. Defendant's disclosure of personal information was not a permitted use under 18 U.S.C. § 2721(b).

90. Defendant knowingly obtained and/or disclosed Plaintiff's and Class Members' personal information, which came from a motor vehicle record, for a purpose not permitted under the DPPA.

91. Defendant knowingly obtained and maintained Plaintiff's and Class Members' Private Information, including their driver's license numbers, on its network without implementing reasonable security measures to prevent unauthorized access or disclosure, resulting in the exposure of that information to cybercriminals in the Data Breach.

92. Defendant failed to implement adequate protections or security measures to safeguard this information from unauthorized access, and its inadequate security practices allowed cybercriminals to obtain and disclose Plaintiff's and Class Members' Private Information without authorization.

93. Alternatively, Defendant had constructive notice that it had disclosed the Private Information of Plaintiff and Class Members to unauthorized third parties, because it should have been aware that maintaining sensitive motor vehicle records without adequate security measures would expose that information to unauthorized access and disclosure.

94. At the very least, Defendant was willfully ignorant that its network, servers, and systems lacked adequate protections to secure Plaintiff's and Class Members' Private Information and would disclose that information to cybercriminals.

95. Merriam-Webster's dictionary defines "disclose" as "to make known or public," "to expose to view," or, alternatively, "to open up." None of these definitions requires an identified intended recipient. Instead, disclosure is the act of exposure. Whether or not Defendant meant for

identifiable third parties to access the information is not relevant. All that is required for a knowing disclosure is a voluntary action.

96. Pursuant to 18 U.S.C. § 2724(b)(1)-(4), Plaintiff seeks, on behalf of himself and members of the Class, (1) actual damages, not less than statutory liquidated damages in the amount of $2,500; (2) punitive damages; (3) reasonable attorneys' fees and costs; and (4) preliminary and equitable relief as the Court determines to be appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court:

A. Certify this case as a class action, and appoint Plaintiff as Class Representatives and the undersigned attorneys as Class Counsel;

B. Enter judgment in favor of Plaintiff and the Class;

C. Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and Class members, including reformation of practices and an accounting and purging of wrongfully obtained personal information;

D. Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages and/or restitution to which Plaintiff and Class members are entitled;

E. Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

F. Award Plaintiff and Class members pre- and post-judgment interest as provided by law;

G. Enter such other orders as may be necessary to restore to Plaintiff and Class members any money and property acquired by Defendant through its wrongful conduct;

H. Award Plaintiff and Class members reasonable litigation expenses and attorneys' fees as permitted by law; and

I. Award such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues triable as of right.

Dated: September 4, 2026

Respectfully submitted,

*/s/ J. Greg Murphy*
J. Greg Murphy
**GORDON MCKERNAN INJURY ATTORNEYS**
63 Del Orleans Avenue
Denham Springs, LA 70726
Telephone: (225) 214-0631
Facsimile: (225) 214-0631
Email: Greg@getgordon.com

Christian Levis (*pro hac vice* forthcoming)
Amanda G. Fiorilla (*pro hac vice* forthcoming)
Michi Rodriguez (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
Email: clevis@lowey.com
Email: afiorilla@lowey.com
Email: mrodriguez@lowey.com

Anthony M. Christina (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: (215) 399-4770
Facsimile: (914) 997-0035
Email: achristina@lowey.com
*Counsel for Plaintiff and the Class*